UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| STEPHANIE KELLY, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | Civil No. l:23-cv-527-LM-TSM |
| ) | |
| JOHN FORMELLA, solely in his official ) | |
| capacity as Attorney General of the ) | |
| State of New Hampshire, ) | |
| ) | |
| ALLEN ALDENBERG, solely in his official ) | |
| capacity as Chief of Police of the ) | |
| city of Manchester, NH, ) | |
| ) | |
| KIMBERLY CHABOT, solely in her official ) | |
| capacity as a circuit judge of the ) | |
| New Hampshire Judicial Branch ) | |
| ) | |
| Defendants. ) | |

**AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND
DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

   This is a complaint challenging the constitutionality of NH RSA 633:3-a and NH RSA 173-B both facially and as-applied in plaintiff's case. Plaintiff seeks a declaratory judgment, and injunctive relief enjoining defendants from enforcing the statutes.

## PARTIES

1. Plaintiff Stephanie Kelly is a resident of Manchester, NH.

2. Defendant John Formella is the Attorney General of the State of New Hampshire. He is named as a defendant solely in his official capacity.

3. Defendant Allen Alderberg is the Police Chief for the City of Manchester, New Hampshire. He is named as a defendant solely in his official capacity.

4. Defendant Kimberly Chabot is a judge of the New Hampshire Circuit Court. She is named as a defendant solely in her official capacity.

## JURISDICTION AND VENUE

5. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6. Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

7. Defendants are public officials of the State of New Hampshire. Defendants reside within this District and/or perform official duties within the State of New Hampshire. This Court, accordingly, has personal jurisdiction over the Defendants.

8. Venue in the District of New Hampshire is based on 28 U.S.C. § 1391(b).

## FACTS PLEAD

9. On or about June 4, 2022, Plaintiff's former intimate partner, Corey Rivers, allegedly committed the crime of second degree assault (RSA 631:2,I(f)) against Plaintiff in that he "knowingly engaged in the strangulation of another, specifically, S.K., an intimate partner, when Rivers applied pressure to S.K.'s throat or neck with his right arm after placing her in a "choke hold" during an argument, which caused S.K. to experience impeded breathing or

blood circulation, contrary to the form of the Statute, in such case made and provided, and against the peace and dignity of the State."[1]

10. On or about July 18, 2023, Corey Rivers filed a civil stalking petition (RSA 633:3-a) against Plaintiff. See *Corey Rivers v. Stephanie Kelly*, No. 456-2023-CV-00300, 9th Circuit – District Division, Manchester, NH, Appeal No. 2023-0491.

11. On July 24, 2023, a hearing on Corey River's civil stalking petition was held before Judge Polly Hall, who granted Corey River's civil stalking petition against Plaintiff.[2]

12. On or about July 26, 2023, Corey Rivers filed a Landlord Tenant writ and eviction notice (RSA 540) against Plaintiff with intent to terminate her tenancy. See *Corey Rivers v. Stephanie Kelly*, No. 456-2023-LT-00824, 9th Circuit – District Division, Manchester, NH.

13. On August 10, 2023, a hearing[3] on Corey River's Landlord Tenant writ and eviction notice was held before Judicial Referee David Kent,[4] with orders issued by Judge Chabot.

14. Judge Chabot found against Plaintiff, and for Corey Rivers, in the state court landlord tenant action previously described.

15. Consequently, Plaintiff was then left homeless.

16. Ashley Foster is Corey River's more recent intimate partner. Plaintiff and Ashley Foster have never co-habitated, and there is no "qualifying relationship" between Ashley Foster and Plaintiff per RSA 173-B:1.

17. On or about September 26, 2023, Ashley Foster also filed a civil stalking petition (RSA 633:3-a) against Plaintiff. See *Ashley Foster v. Stephanie Kelly*, No. 456-2023-CV-00445, 9th Circuit – District Division, Manchester, NH.

---

[1] See Doc 7-1 at page 42.
[2] See Doc 7-1 at page 3.
[3] See Doc 7-1 at page 4.
[4] A "New Hampshire Judicial Referee," just like a "New Hampshire Marital Master," can only issue recommendations, and not orders. *Witte v. Justices of the New Hampshire Superior Court*, 831 F.2d 362 (1st Cir. 1987). "Masters have no inherent power, but rather derive all their power from the appointing judge or from the agreement of the parties." *Witte* at 363. "Thus, under the marital master system, it is a judge, not a master, which determines the case." *Id*.

18. On October 20, 2023, a hearing on Ashley Foster's civil stalking petition was held before Judge Polly Hall, who scheduled another hearing because Plaintiff had not yet been served.[5]

19. On October 24, 2023, Corey Rivers was arrested and criminally charged for allegedly violating a civil domestic violence restraining order ([RSA 173:B-9](#)).[6]

20. On October 24, 2023, a bail hearing for Corey Rivers was held before Judge Chabot.[7]

21. On October 24, 2023, Judge Chabot released Corey Rivers on criminal bail the same day he was arrested.[8]

22. On November 3, 2023, a civil hearing on Ashley Fosters's civil stalking petition (at ¶17) was held before Judge Chabot.[9]

23. On November 7, 2023, Judge Chabot found against Plaintiff, complaining that Plaintiff's posts on social media about "her long time boyfriend" Corey Rivers[10] and Ashley Foster amounted to a "smear campaign" against Ashley Foster. Cf. [*Counterman v. Colorado*, 600 U.S. 66 (2023)](#).

24. On November 7, 2023, Judge Chabot further ordered[11] that:

> This court has jurisdiction to enter custody and visitation orders in this case under both RSA 633:3-a, NHRSA 173-B: 5 and the New Hampshire Uniform Child Custody Jurisdiction and Enforcement Act, RSA 458-A.
>
> 17. ☐ The defendant shall pay child support to the plaintiff. (See Uniform Support Order (USO) attached.)
> 18. ☐ The plaintiff shall have use of the following vehicle:
>     Make _____   Model _____   Year _____
> 19. ☐ The defendant shall have use of the following vehicle:
>     Make _____   Model _____   Year _____
> 20. ☒ The defendant shall pay to the plaintiff the amount of  $ <u>$640.00 (4 days' pay at $20.00/hour for an 8 hour day)</u> for losses suffered as a direct result of the stalking, and $ _____ for attorney's fees.
> 21. ☐ The defendant is directed to attend: ☐ a batterer's intervention program and/or ☐ personal counseling for a period of _____ months/year.
>     The defendant shall provide proof of attendance to the Court at monthly intervals.
> 22. ☒ The defendant shall relinquish all concealed weapons permits and hunting licenses.
> 23. ☒ Other: <u>Defendant shall pay the above amount in Paragraph 20 within 14 days of the date of Clerk's Notice of Decision accompanying this Order.</u>

---

5  See [Doc 7-1](#) at page 10.
6  See [Doc 7-1](#) at pages 14-16.
7  See [Doc 7-1](#) at pages 17-22.
8  See [Doc 7-1](#) at pages 23-30.
9  See [Doc 7-1](#) at page 32.
10 Who allegedly engaged in class B felony assault against Plaintiff.
11 Plaintiff S.K. is the "defendant" in this state court order, and Ashley Foster is the "plaintiff."

25. There is no provision in RSA 633:3-a providing for "payment in the amount of $640 (4 days' pay at $20/hour for an 8 hour day) for losses suffered as a direct result of the stalking."

26. On November 27, 2023, Plaintiff filed her initial federal Complaint (Doc 1) in this matter.

27. On January 26, 2024, the N.H. Supreme Court affirmed Judge Polly Hall's finding that Corey Rivers was a victim of "civil" stalking by Plaintiff.[12]

28. <u>After</u> the N.H. Supreme Court affirmed that Corey Rivers was a "stalking victim" of Plaintiff in a <u>civil</u> case, on February 15, 2024, a grand jury <u>then</u> indicted Corey Rivers for the <u>criminal</u> class B felony assault against Plaintiff, that Corey Rivers allegedly committed long before Corey Rivers ever claimed to be a "victim" of Plaintiff. *See* <u>State v. Corey Rivers, No. 216-2024-CR-00185, Hillsborough County Superior Court, Northern District</u>.[13]

29. On March 11, 2024, Corey Rivers was released on personal recognizance.[14]

30. On April 19, 2024, a hearing was held before Judge Chabot wherein Ashley Foster claimed Plaintiff was in contempt of Judge Chabot's prior order (at ¶24) requiring Plaintiff to pay Ashley Foster $640.[15]

31. On April 23, 2024, Judge Chabot found against Plaintiff, and in favor of Ashley Foster.

32. On May 9, 2024, a criminal trial was held before Judge Chabot in <u>State v. Corey Rivers</u>, No. 456-2023-CR-02799[16] for his alleged violation (RSA 173:B-9) of the domestic violence order of protection Plaintiff has against him.

33. On May 9, 2024, Judge Chabot placed this criminal complaint against Corey Rivers on file without finding,[17] per terms of an agreement that Corey Rivers "remain of good behavior; no felonies or misdemeanors,"[18] despite Corey

---

12 See Doc 7-1 at pages 40-41.
13 See Doc 7-1 at page 42.
14 See Doc 7-1 at pages 50-52.
15 See Doc 7-1 at page 69.
16 See Doc 7-1 at pages 50-52.
17 See Doc 7-1 at pages 75-77.
18 See Doc 7-1 at page 74.

Rivers' prior criminal indictment for class B felony assault against Plaintiff, while these felony charges were still pending.

34. On May 15, 2024, a criminal dispositional conference was held concerning Corey River's criminal indictment for class B felony assault against Plaintiff.[19]

35. On May 17, 2024, a "show cause" hearing was held before Judge Chabot because Plaintiff did not (and could not) pay Ashley Foster $640.

36. Judge Chabot's order (at ¶24) claims that Judge Chabot has jurisdiction over Plaintiff and Ashley Foster "under *both* RSA 633:3-a *and* RSA 173-B:5.

## MATTERS OF LAW PLEAD COMMON TO ALL COUNTS

37. Plaintiff repeats and re-alleges paragraphs 1 though 36 above.

38. RSA 173:B, V states that:

    (a) Mutual orders for relief shall not be granted. A foreign mutual order for relief shall only be granted full faith and credit in New Hampshire if it meets the requirements set out in RSA 173-B:13, VII.

    (b) Cross orders for relief may be granted only if:

    (1) The court has made specific findings that each party has committed abuse against the other; and

    (2) The court cannot determine who is the primary physical aggressor.

39. RSA 173:B:9, I(a) states that:

    When the defendant violates either a temporary or permanent protective order issued or enforced under this chapter, peace officers shall arrest the defendant and ensure that the defendant is detained until arraignment, provided that in extreme circumstances, such as when the health of the defendant would be jeopardized by the temporary detention, a judge in response to a request by the arresting law enforcement officer or agency, may order an alternative

---

[19] See Doc 7-1 at pages 78-77.

      to detention pending arraignment. Such arrests may be made within 12 hours without a warrant upon probable cause, whether or not the violation is committed in the presence of a peace officer.

40. If a <u>civil</u> protective order was issued pursuant to RSA 173:B, V that ordered the defendant to pay $640 to a plaintiff, and the plaintiff was unable to pay, then this could result in an arrest and <u>criminal</u> charges under RSA 173:B:9, I(a).

41. If a defendant in such a criminal case were arrested on a Friday, then the language of RSA 173:B:9, I(a) would *require* preventative detention in nearly all circumstances for up to 72 hours, until a bail/arraignment hearing could be held on a Monday.

42. RSA 173-B:9, I(a) is intended to be punitive in nature, rather than related to any legitimate government objective. *See, e.g.*, *Bell v. Wolfi*sh, 441 U.S. 520 (1979), observing that "punitive measures ... may not constitutionally be imposed prior to a determination of guilt." *Bell* at 537.

43. "Four requirements must be met in order for Rooker-Feldman to bar suit: '(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.'" *Allen v. DeBello* , 861 F.3d 433, 438 (3d Cir. 2017). Indeed, "the doctrine has narrow applicability. Rooker-Feldman does not bar suits that challenge actions or injuries underlying state court decisions — and especially those that predate entry of a state court decision — rather than the decisions themselves." *Id*.

44. In particular, Rooker-Feldman cannot bar suit concerning any judgments rendered after this federal action was first filed on November 27, 2023.

45. "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 33 (2008), citing *Steffel v. Thompson*, 415 U.S. 452 (1974).

46. "Judicial immunity does not protect judges so much as it protects the judicial acts they undertake as part of their public service; it is 'defined by the

*functions* it protects and serves, not by the person to whom it attaches.' (emphasis in original). As such, judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter' or when they engage in nonjudicial acts." *Gibson v. Goldston*, 85 F. 4th 218, 223 (4th Circ. 2023).

47. The United States Supreme Court has "has distinguished judges' judicial functions, which are protected by judicial immunity, from their 'administrative, executive, or legislative functions,' which are not." *Gibson at 225*, citing *Forrester v. White*, 484 U.S. 219 (1988).

48. In a recent *Opinion* by the Hon. Paul Barbadoro, he stated:

> Vagueness doctrine "rests on the twin constitutional pillars of due process and separation of powers." *Davis*, 588 U.S. at 451; see also *Sessions*, 584 U.S. at 155-56. The doctrine serves due process concerns by requiring that those subject to the law be given "a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). It also promotes the proper allocation of power among the three branches of government by requiring legislatures, rather than less politically accountable judges and executive branch officials, to "define what conduct is sanctionable and what is not." *Sessions*, 584 U.S. at 156. Accordingly, a legislative enactment will be found to be unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); see also *McCoy v. Town of Pittsfield*, 59 F.4th 497, 509 (1st Cir. 2023) (applying *Williams* to a vagueness challenge to a town ordinance).

> Vagueness doctrine does not require perfect legislative precision. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. "Because words are rough-hewn tools, not surgically precise instruments, some degree of inexactitude is acceptable in statutory language. Reasonable breadth in the terms employed by an ordinance does not require that it be invalidated on vagueness grounds." *Draper v. Healey*, 827 F.3d 1, 4 (Souter, Circuit Justice, 1st Cir. 2016)

(cleaned up). Instead, a statute is unconstitutionally vague "only if it prohibits an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application." *Frese v. Formella*, 53 F.4th 1, 10 (1st Cir. 2022) (cleaned up). And a "statute authorizes an impermissible degree of enforcement discretion—and is therefore void for vagueness—where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." *Id.* at 7 (quoting *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 410 (D.C. Cir. 2017)).

1. Speech Restrictions

The degree of scrutiny that a legislative enactment will receive when it is challenged on vagueness grounds will vary depending on both the nature of the enactment and the consequences that follow from its violation. When assessing a vagueness challenge, the "test of vagueness applies with particular force in review of laws dealing with speech." *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976); see also *Vill. of Hoffman Ests.*, 455 U.S. at 499 (noting that "a more stringent vagueness test should apply" to laws interfering with the right of free speech). This is because First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963) (citations omitted). "[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." *Grayned*, 408 U.S. at 109 (cleaned up). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." Id. (cleaned up). Such self-censorship is inimical to our democracy, as "[t]he right to speak freely and to promote diversity of ideas and programs is . . . one of the chief distinctions that sets us apart from totalitarian regimes." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).

The danger presented by vague speech restrictions is especially severe when a law purports to regulate speech based on the speaker's viewpoint. As the Supreme Court has explained:

Discrimination against speech because of its message is presumed to be unconstitutional. . . . When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828-29 (1995) (citations omitted); see also *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004) ("The bedrock principle of viewpoint neutrality demands that the state not suppress speech where the real rationale for the restriction is disagreement with the underlying ideology or perspective that the speech expresses."). Courts should thus "apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994).

      2. Penalty Provisions

The consequences that follow from a violation of an allegedly vague statute can also affect "[t]he degree of vagueness that the Constitution tolerates." *Vill. of Hoffman Ests.*, 455 U.S. at 498. Civil statutes will often be subject to lesser scrutiny than criminal statutes because "the consequences of imprecision are less severe." *Sessions*, 584 U.S. at 156 (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 498-99). But "the happenstance that a law is found in the civil or criminal part of the statute books" is not dispositive. *Id.* at 184 (Gorsuch, J., concurring in part). As Justice Gorsuch observed in *Sessions*, certain civil penalties are "routinely graver than those associated with misdemeanor crimes—and often harsher than the punishment for felonies." *Id.*; see also *Kashem v. Barr*, 941 F.3d 358, 370 (9th Cir. 2019) ("A provision that nominally imposes only civil penalties but nonetheless carries a 'prohibitory and stigmatizing effect' may warrant 'a relatively strict test.'") (quoting *Vill. of*

- 10 -

*Hoffman Estates*, 455 U.S. at 499)). Grave civil penalties can include "remedies that strip persons of their professional licenses and livelihoods." *Sessions*, 584 U.S. at 184 (Gorsuch, J., concurring in part).

See *Local 8027, AFT-New Hampshire, AFL-CIO v. N.H. Dep't of Educ.*, No. 21-cv-1077-PB, 2024 DNH 040 (D.N.H. May 28, 2024) (finding that RSA 354-A:31, RSA 354-A:32, and RSA 193:40 are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment).

49. The overbreadth doctrine is a principle in constitutional law that allows courts to invalidate laws that are written so broadly that they may infringe on constitutionally protected freedoms, particularly the freedom of speech under the First Amendment. This doctrine is designed to prevent laws that could potentially suppress a significant amount of protected speech, even if they also target unprotected speech or conduct.

50. *See, e.g.*, *United States v. Stevens*, 559 U.S. 460 (2010) (finding 18 U.S.C § 48 unconstitutionally overbroad); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (underscoring the strict scrutiny applied to content-based restrictions on speech while analyzing overbreadth and vagueness); *Board of Airport Commissioners of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987) (holding a resolution at Los Angeles International Airport (LAX) violated the First Amendment because it was substantially overbroad); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973) (articulating general jurisprudence of overbreadth doctrine).

## CAUSES OF ACTION

### COUNT ONE

51. Plaintiff repeats and re-alleges paragraphs 1 through 50 above.

52. Plaintiff alleges [NH RSA 633:3-a](NH RSA 633:3-a) is unconstitutionally vague, both facially and as-applied, under the Fourteenth Amendment.

53. Judge Chabot's order against the Plaintiff centers on the Plaintiff's social media posts about her long-time boyfriend, Corey Rivers. The Plaintiff alleged that Rivers knowingly engaged in her strangulation during an argument. According to the Plaintiff, Rivers applied pressure to her throat or neck with his right arm after placing her in a choke hold, which caused her to experience impeded breathing or blood circulation.

54. Judge Chabot ruled that these posts, along with those against Ashley Foster, amounted to a "smear campaign" against Foster.

55. The statute fails to provide the Plaintiff or any person of ordinary intelligence fair notice of what is prohibited. It is so vague that it authorizes or encourages seriously discriminatory enforcement. It prohibits acts that are so uncertain that people of average intelligence would have to guess at their meaning and modes of application. Furthermore, it fails to set reasonably clear guidelines for law enforcement officials and triers of fact, which is necessary to prevent arbitrary and discriminatory enforcement.

56. Plaintiff seeks declaratory relief finding the statute unconstitutional.

57. Plaintiff seeks injunctive relief restraining and enjoining defendants from enforcing the statute.

### COUNT TWO

58. Plaintiff repeats and re-alleges paragraphs 1 through 57 above.

59. Plaintiff alleges [NH RSA 633:3-a](NH RSA 633:3-a) is unconstitutionally over-broad, both facially and as-applied, under the Fourteenth Amendment.

60. The statute could potentially suppress a significant amount of protected speech. While it might target unprotected conduct, it is so broad that it encompasses protected speech, such as Plaintiff's social media posts. This overbreadth fails to provide clear guidelines, leading to the suppression of lawful expression and potentially infringing on individuals' First Amendment rights. Consequently, it risks discouraging people from engaging in legitimate, protected speech out of fear of arbitrary and discriminatory enforcement.

61. Plaintiff seeks declaratory relief finding the statute unconstitutional.

62. Plaintiff seeks injunctive relief restraining and enjoining defendants from enforcing the statute.

**COUNT THREE**

63. Plaintiff repeats and re-alleges paragraphs 1 through 62 above.

64. Plaintiff alleges NH RSA 173-B is unconstitutionally vague, both facially and as-applied, under the Fourteenth Amendment.

65. In a civil context, the NH Supreme Court has found that Corey Rivers is a "stalking victim" of Plaintiff.

66. In a criminal context, Corey Rivers is alleged to have knowingly engaged in Plaintiff's strangulation during an argument. According to the Indictment Rivers applied pressure to Plaintiff's throat or neck with his right arm after placing her in a choke hold, which caused her to experience impeded breathing or blood circulation.

67. The statute fails to provide the Plaintiff or any person of ordinary intelligence fair notice of whether or under what circumstances cross orders of protection should be granted. It is so vague that it authorizes or encourages seriously discriminatory enforcement. It prohibits acts that are so uncertain that people of average intelligence would have to guess at their meaning and modes of application. Furthermore, it fails to set reasonably

clear guidelines for law enforcement officials and triers of fact, which is necessary to prevent arbitrary and discriminatory enforcement.

68. Plaintiff seeks declaratory relief finding the statute unconstitutional.

69. Plaintiff seeks injunctive relief restraining and enjoining defendants from enforcing the statute.

**COUNT FOUR**

70. Plaintiff repeats and re-alleges paragraphs 1 through 69 above.

71. Plaintiff alleges NH RSA 173-B is unconstitutionally over-broad, both facially and as-applied, under the Fourteenth Amendment.

72. The statute could potentially suppress a significant amount of protected speech. While it might target unprotected conduct, it is so broad that it encompasses protected speech, such as Plaintiff's social media posts. This overbreadth fails to provide clear guidelines, leading to the suppression of lawful expression and potentially infringing on individuals' First Amendment rights. Consequently, it risks discouraging people from engaging in legitimate, protected speech out of fear of arbitrary and discriminatory enforcement.

73. Plaintiff seeks declaratory relief finding the statute unconstitutional.

74. Plaintiff seeks injunctive relief restraining and enjoining defendants from enforcing the statute.

**COUNT FIVE**

75. Plaintiff repeats and re-alleges paragraphs 1 through 74 above.

76. Judge Chabot has issued an order against Plaintiff alleging she has jurisdiction under RSA 173-B:5. To order Plaintiff to pay Ashley Foster $640.

77. However Plaintiff has never had any kind of relationship with Ashley Foster to justify Judge Chabot exercising jurisdiction under RSA 173-B:5.

78. Consequently, any such "order" by Judge Chabot was made in the clear absence of all jurisdiction over the subject-matter.

79. There is nothing in the language of [NH RSA 633:3-a](#) to allow a judge to mete out "punishment" in the form of the $640 payment Judge Chabot required Plaintiff to make to Ashley Foster.

80. Consequently, any such "order" by Judge Chabot was made in the clear absence of all jurisdiction over the subject-matter.

81. Plaintiff seeks declaratory relief finding that Judge Chabot has issued "orders" against Plaintiff in the clear absence of all jurisdiction over the subject-matter.

82. Plaintiff seeks injunctive relief restraining and enjoining Judge Chabot from issuing further "orders" against Plaintiff in the clear absence of all jurisdiction over the subject-matter.

83. Plaintiff seeks injunctive relief restraining and enjoining Judge Chabot from performing any further administrative functions in Plaintiff's state law case, such as issuing any further *future* orders of any kind, or presiding over any further *future* hearings.

## JURY TRIAL DEMAND

84. Plaintiff demands a trial by jury on all disputed issues of fact so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief as follows:

A) Issue preliminary and permanent injunctive relief restraining Defendants, their employees, agents, and successors in office from enforcing the statutes located at NH RSA 633:-a and NH RSA 173-B;

B) Declare that the statutes located at NH RSA 633:-a and NH RSA 173-B are unconstitutional facially and as applied under the Fourteenth Amendment's Due Process provisions to the United States Constitution;

C) Issue declaratory relief that Judge Chabot has acted in the clear absence of all subject matter jurisdiction.

D) Award Plaintiff her reasonable costs of suit and other expenses under 42 U.S.C. § 1988; and

E) Award such other relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Stephanie Kelly*

_____
STEPHANIE KELLY
    *Pro Se*
2 Pheasant Lane
Manchester, NH 03109
(603) 490-3785

July 11, 2024.